822 N.E.2d 1 (2004)
354 Ill. App.3d 699
290 Ill.Dec. 719
LEGION INSURANCE COMPANY, Plaintiff and Counterdefendant-Appellant,
v.
EMPIRE FIRE AND MARINE INSURANCE COMPANY, Defendant and Counterplaintiff-Appellee.
No. 1-03-2833.
Appellate Court of Illinois, First District, Fourth Division.
December 23, 2004.
Rehearing Denied February 3, 2005.
*2 David M. Holmes, Izabella A. Bielinska, Smita Mokshagundam, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Chicago, for Appellant.
Esther Joy Schwartz, Stellato & Schwartz, Ltd., Chicago, for Appellee.
Justice THEIS delivered the opinion of the court:
This appeal arises from a contribution and declaratory judgment action brought by plaintiff-counterdefendant Legion Insurance Company (Legion) against defendant-counterplaintiff Empire Fire & Marine Insurance Company (Empire) concerning their mutual insured, Barrco Industries, Inc. (Barrco). Empire also filed a counterclaim for a declaratory judgment, seeking a declaration that it did not owe Barrco a duty to defend or indemnify. After the parties filed cross-motions for summary judgment on both the complaint and the counterclaim, the trial court granted Empire's motion and denied Legion's motion. Legion now appeals, arguing that the court erred in finding that Empire's policy did not provide coverage to Barrco, and that Legion could not seek contribution from Empire. Because we find that Barrco deactivated its previous tender of its defense to Empire, Empire's policy was not implicated. We affirm.
The following background information is necessary to an understanding of this case. Joseph J. Duffy Co. (Duffy) was the general contractor at a construction site located at Dearborn Street between Erie and Huron Streets in Chicago. Barrco was a subcontactor of Ozark Steel Sales, Inc., and Ozark Steel Fabricators (collectively, Ozark), and worked at the project under the Ozark-Barrco subcontract. On May 27, 1997, Ronald Stone sustained injuries while working at the project. Stone was an employee of Unified Management, Inc., an employee leasing agency, but was leased to Barrco at the time of his injury. It is undisputed that Stone was a leased employee of Barrco at that time. Shortly thereafter, Stone filed suit against Duffy and Ozark, among others.
Duffy then filed a third-party complaint for contribution against Barrco, Stone's employer, on May 11, 1999. Ozark filed a similar third-party contribution action against Barrco on May 25, 1999. In count II of its amended complaint, Ozark alleged that, although an employer's contribution liability to a third-party plaintiff is generally limited to the amount of workers' compensation benefits paid to the injured party under Kotecki v. Cyclops Welding Corp., 146 Ill.2d 155, 166 Ill.Dec. 1, 585 N.E.2d 1023 (1991), Barrco waived its Kotecki cap through a clause in the Ozark-Barrco subcontract. Also in count II, Ozark sought contribution for the amount it paid above Barrco's Kotecki limit. In count I, Ozark sought contribution without a Kotecki waiver. Additionally, Barrco asserted *3 its Kotecki cap as an affirmative defense to Duffy's contribution claim. After Duffy filed a motion to strike this affirmative defense, the trial court agreed that Barrco waived its Kotecki cap by contract.
At the time of Stone's accident, Barrco was covered by two separate insurance policies: an employer's liability/worker's compensation policy issued by Legion; and a commercial general liability policy (CGL) issued by Empire. Barrco tendered its defense of both the Duffy and Ozark third-party complaints to Legion. Legion initially provided a defense to Barrco in both actions in February 2000 and continued to represent Barrco under a reservation of rights as explained in an April 6, 2000 letter. On December 9, 1999, Barrco's attorney hired by Legion sent a letter to Empire tendering Barrco's defense in the Duffy and Ozark contribution actions to Empire. Barrco then wrote Empire on July 20, 2000, indicating that it did not want to tender its defense to Empire. Empire refused coverage and filed a declaratory judgment action on November 9, 2000 seeking a declaration that it owed Barrco no duty to defend or indemnify.[1]
On August 27, 2001, the parties settled the Stone lawsuit, including the Ozark and Duffy contribution actions, for $2,040,000, of which Barrco's share was $640,000. Pursuant to the settlement, Legion paid $640,000 on behalf of Barrco and also agreed to waive its worker's compensation lien of $340,810.48, an amount it had previously paid to Stone to settle Stone's worker's compensation claim. Additionally, the original Stone lawsuit and both the Ozark and Duffy contribution actions were dismissed.
On October 8, 2002, Legion filed a four-count complaint against Empire seeking indemnification, contribution, declaratory judgment, and estoppel. Legion argued that Empire had a duty to defend and indemnify Barrco in the Ozark third-party contribution action and, thus, was required to contribute, on Barrco's behalf, to the settlement. Legion sought compensatory damages and attorney fees and costs incurred in its defense of Barrco. In its answer to this complaint, Empire responded, inter alia, that Barrco's tender of its defense to Empire had been rescinded, in writing, by the July 20, 2000 letter. Empire also argued as several of its affirmative defenses that it had no duty to defend or indemnify Barrco because Barrco never tendered its defense to Empire, again relying on the July 20, 2000 letter. It argued that, in that letter, Barrco indicated that it was placing Empire on notice of the claim, but did not intend to seek coverage from Empire.
On January 21, 2003, Empire filed a counterclaim for a declaratory judgment, contending that it had no duty to defend or indemnify Barrco in the Ozark contribution action due to several exclusions in its policy. Again, Empire cited the July 20, 2000 letter from Barrco indicating Barrco's desire not to seek coverage from Empire.
On February 19, 2003, Empire filed its motion for summary judgment on both Legion's complaint and Empire's counterclaim. Empire first argued that it had no duty to defend and indemnify Barrco under its CGL policy in the Ozark contribution action because of exclusion e(1), which excluded coverage for liability to an employee of the insured injured during the course of his employment. Additionally, Empire argued that the exception to this *4 exclusion, allowing coverage for liability assumed under an "insured contract," did not apply to the Barrco-Ozark subcontract, relying on Hankins v. Pekin Insurance Co., 305 Ill.App.3d 1088, 239 Ill.Dec. 394, 713 N.E.2d 1244 (1999). Empire again mentioned the July 20, 2000 letter, which indicated that Barrco did not want to tender its defense to Empire and attached this letter as an exhibit to its motion.
Legion filed a cross-motion for summary judgment, contending that Empire's CGL policy covered Stone's loss above the Kotecki limit, citing Michael Nicholas, Inc. v. Royal Insurance Co. of America, 321 Ill.App.3d 909, 255 Ill.Dec. 82, 748 N.E.2d 786 (2001), and West Bend Mutual Insurance Co. v. Mulligan Masonry Co., 337 Ill.App.3d 698, 272 Ill.Dec. 244, 786 N.E.2d 1078 (2003). Legion then argued that because Empire was liable for the amount of the settlement above the Kotecki cap, Empire owed Legion $640,000 and one-half of the defense costs. In response, Empire argued, inter alia, that Barrco's July 20, 2000 letter to Empire rescinded its prior tender of its defense to Empire, thus deactivating coverage under Empire's policy. Empire contended that because Barrco deactivated its tender, Empire had no duty to defend or indemnify Barrco and, thus, had no duty to pay Legion in contribution.
In ruling on both motions, the court relied on Hankins and found that Empire's CGL policy was not an "insured contract" and, thus, the exception to exclusion e(1) did not apply. Due to this exclusion, Empire did not have a duty to defend or indemnify Barrco and, therefore, Legion could not seek contribution from Empire. The court then granted Empire's motion for summary judgment on both the complaint and the counterclaim and denied Legion's motion. Legion then filed this timely appeal.
Summary judgment is proper where the pleadings, depositions, and admissions on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. City of Chicago v. Holland, 206 Ill.2d 480, 487, 276 Ill.Dec. 887, 795 N.E.2d 240, 245 (2003). Where both parties file cross-motions for summary judgment, they agree that no material issue of fact exists and that only a question of law is involved. Board of Education v. Cunningham, 346 Ill.App.3d 1027, 1030, 282 Ill.Dec. 631, 806 N.E.2d 1219, 1221 (2004). We review the grant of summary judgment de novo. Holland, 206 Ill.2d at 487, 276 Ill.Dec. 887, 795 N.E.2d at 245. Additionally, we can affirm the trial court's ruling on any basis in the record. Ashley v. Pierson, 339 Ill.App.3d 733, 737, 274 Ill.Dec. 574, 791 N.E.2d 666, 670 (2003).
Before addressing the specific provisions of Empire's CGL policy, we must first address the threshold issue of whether Barrco ever sought coverage under Empire's policy such that Empire had a duty to defend and indemnify Barrco. We find that it did not.
Under the "selective tender" rule, when several insurance policies are available to the insured, that insured has the paramount right to choose or knowingly forego an insurer's participation in a claim. John Burns Construction Co. v. Indiana Insurance Co., 189 Ill.2d 570, 574-76, 244 Ill.Dec. 912, 727 N.E.2d 211, 215-16 (2000). The insured may choose to forego an insurer's assistance for various reasons, including the insured's fear that premiums would increase or that the policy would be canceled in the future. Cincinnati Cos. v. West American Insurance Co., 183 Ill.2d 317, 326, 233 Ill.Dec. 649, 701 N.E.2d 499, 503 (1998). Moreover, an insured's ability to forego that assistance *5 should be protected. Cincinnati Cos., 183 Ill.2d at 326, 233 Ill.Dec. 649, 701 N.E.2d at 503. The insured's right to choose encompasses the right to deactivate coverage with an insurer previously selected for purposes of invoking exclusive coverage with another insurer. Alcan United, Inc. v. West Bend Mutual Insurance Co., 303 Ill.App.3d 72, 83, 236 Ill.Dec. 560, 707 N.E.2d 687, 695 (1999). See also Richard Marker Associates v. Pekin Insurance Co., 318 Ill.App.3d 1137, 1143, 252 Ill.Dec. 922, 743 N.E.2d 1078, 1082 (2001).
Only when an insurer's policy is triggered does the insurer become liable for the defense and indemnity costs of a claim. Alcan United, 303 Ill.App.3d at 80, 236 Ill.Dec. 560, 707 N.E.2d at 692, citing Bituminous Casualty Corp. v. Royal Insurance Co. of America, 301 Ill.App.3d 720, 726, 234 Ill.Dec. 916, 704 N.E.2d 74, 79 (1998). When an insured has knowingly chosen to forego an insurer's assistance by instructing the insurer not to involve itself in the litigation, the insurer is relieved of its obligation to the insured with regard to that claim. Cincinnati Cos., 183 Ill.2d at 326, 233 Ill.Dec. 649, 701 N.E.2d at 503-04. See also American National Fire Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh, 343 Ill.App.3d 93, 99, 277 Ill.Dec. 767, 796 N.E.2d 1133, 1138 (2003). The targeted insurer, then, has the sole responsibility to defend and indemnify the insured. Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange, 325 Ill.App.3d 970, 976, 259 Ill.Dec. 230, 758 N.E.2d 353, 357 (2001), citing Burns, 189 Ill.2d at 578, 244 Ill.Dec. 912, 727 N.E.2d at 217. That insurer may not seek equitable contribution from the other insurers that were not designated by the insured. Cincinnati Cos., 183 Ill.2d at 324, 233 Ill.Dec. 649, 701 N.E.2d at 503.
In this case, Barrco first tendered its defense in both third-party contribution actions to Legion and Legion provided a defense under a reservation of rights. Counsel for Barrco, which was hired by Legion, entered an appearance in that case on February 8, 2000. Barrco also tendered its defense to Empire in the December 9, 1999 letter where Barrco's attorney wrote to Cindy Lambert at Empire "formally tendering [his] client, Barrco Industries' Inc.'s defense on this matter" and enclosed the third-party complaints.
However, Dewayne Bates of Barrco then wrote to Lambert in a July 20, 2000 letter. The entire text of that letter is as follows:
"Barrco Industries, Inc. to date does not want to tender the third party actions for contribution from Ozark Steel Fabricators, Inc. and Joseph J. Duffy Co. for defense and indemnification to Empire. The above mentioned claim has been forward[ed] to Legion and they [sic] are aware of the third party complaints. Please be aware that we were only trying to put Empire Fire and Marine Insurance Company on notice of a potential claim. This is as a result of the reservation of rights letter from Legion and the `Alternate Employer' endorsement. Barrco Industries wants to make sure that we are completely and appropriately indemnified and covered for defense costs for the loss. If there is a question or problem in regards to coverage, we would like to know about it before an award or judgement is reached.
Thank you for your attention to the file and pursuit of the enclosed document. We will inform you of any changes from Legion Insurance Company in regards to defense and indemnification for this particular case. Also, you will be informed if Barrco Industries *6 need[s] to tender the defense if Legion denies coverage.
If you have any questions or concerns, please feel free to give me a call."
With this letter, Barrco expressly deactivated its previous tender to Empire and explained that it did not want Empire to defend it in third-party contribution suits. Barrco clearly indicated that it did not want Empire's assistance in those actions when it stated that it "to date does not want to tender" the Ozark and Duffy actions to Empire. Rather, Barrco stated that it merely wanted to place Empire on notice of the claims in the event that Legion was ultimately found not to have a duty to defend and indemnify it. Barrco also clearly indicated that it wanted to tender its defense of these matters solely to Legion. Moreover, Barrco informed Empire that, if necessary, Barrco would inform it if it "need[ed] to tender the defense" in the event that Legion denied coverage. In fact, Legion never denied coverage or sought a determination that it did not owe Barrco a duty to defend and the record reflects that Barrco sent no further letters to Empire concerning coverage. Thus, Barrco's July 20, 2000 letter deactivated its previous tender to Empire.
Legion relies o n Dearborn Insurance Co. v. International Surplus Lines Insurance Co., 308 Ill.App.3d 368, 241 Ill.Dec. 689, 719 N.E.2d 1092 (1999), in support of its argument that Barrco's July 20, 2000 letter did not deactivate Empire's coverage. We find that case distinguishable. In Dearborn, this court construed a letter from the insured to one of its insurers, which stated:
"Therefore, at this time, it's probably best that you accept this as a possible claim but not something in which you need to take an active role unless, of course, your claims people disagree. In this regard, I await your feedback." Dearborn, 308 Ill.App.3d at 371, 241 Ill.Dec. 689, 719 N.E.2d at 1094.
The court held that this letter was sufficient to trigger the insurer's duty to defend where it gave the insurer actual notice of the lawsuit against the insured. Dearborn, 308 Ill.App.3d at 373-74, 241 Ill.Dec. 689, 719 N.E.2d at 1096-97. Additionally, the court found that with this letter, the insured did not knowingly forego the insured's assistance or deactivate coverage because the insured gave the insurer no specific direction not to defend and, rather, left the decision of whether to become actively involved in the litigation to the insurer. Dearborn, 308 Ill.App.3d at 374, 241 Ill.Dec. 689, 719 N.E.2d at 1097.
However, in the present case, Barrco's letter to Empire gave Empire clear direction not to defend. It informed Empire that Barrco did not want to tender its defense to Empire at that time and clearly stated that Barrco wanted Legion alone to undertake its defense. Further, Barrco stated that it would inform Empire in the future if Barrco needed to tender its defense to Empire. With this unequivocal language, Barrco specifically instructed Empire not to defend it in the third-party contribution actions. Thus, Dearborn is distinguishable.
Based on the above case law, Barrco clearly had the right to forego Empire's coverage of the Duffy and Ozark contribution actions and had the ability to deactivate coverage with Empire. Barrco's July 20, 2000 letter acted as such a deactivation of coverage and indicated that Barrco did not seek contemporaneous coverage from both Empire and Legion. Once Barrco targeted Legion to exclusively defend it in the contribution suits, Legion had the sole responsibility to defend and indemnify Barrco with respect to those claims and Empire was relieved of its obligation to defend and indemnify. *7 See Cincinnati Cos., 183 Ill.2d at 326, 233 Ill.Dec. 649, 701 N.E.2d at 504. Empire's duty to Barrco was then only to provide standby coverage in the event Legion refused to defend, which Legion never did. See Alcan United, 303 Ill.App.3d at 82, 236 Ill.Dec. 560, 707 N.E.2d at 694. Because Empire had no duty to defend or indemnify Barrco for the Duffy and Ozark contribution claims, Legion is not entitled to contribution from Empire. Burns, 189 Ill.2d at 578, 244 Ill.Dec. 912, 727 N.E.2d at 217; Richard Marker, 318 Ill.App.3d at 1144, 252 Ill.Dec. 922, 743 N.E.2d at 1083. Accordingly, the trial court properly granted summary judgment to Empire and correctly denied Legion's summary judgment motion.
For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.
Affirmed.
REID, P.J., and QUINN, J., concur.
NOTES
[1] Empire later voluntarily dismissed this declaratory judgment action without prejudice on September 14, 2001.