# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*United National Insurance Co. v. 200 North Dearborn Partnership*,
**2012 IL App (1st) 100569**

---

| | |
|---|---|
| Appellate Court Caption | UNITED NATIONAL INSURANCE COMPANY, a Pennsylvania Corporation, Plaintiff-Appellee and Counterdefendant and Cross-Appellant, v. 200 NORTH DEARBORN PARTNERSHIP, an Illinois Partnership, Baird & Warner, Inc., Kenilworth, Inc., Warner Investment Company, Inc., and Elzie Higgenbottom, Defendants-Appellants and Counterplaintiffs and Cross-Appellees (Hartford Casualty Insurance Company, Intervenor Plaintiff-Appellant; United National Insurance Company, Intervenor Defendant-Appellee and Cross-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-10-0569 |
| Rule 23 Order filed | August 6, 2012 |
| Rehearing denied | August 30, 2012 |
| Rule 23 Order withdrawn | October 15, 2012 |
| Opinion filed | October 22, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over the insurance coverage for the fatal injuries suffered by a janitor who fell down an elevator shaft in a commercial building insured by plaintiff, plaintiff was not estopped from asserting its policy defenses, despite its delay in filing a declaratory judgment action, and there was no error in the finding that the deceased was the insured's employee and that the employee liability exclusion in the policy precluded indemnification. |

| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-CH-17017; the Hon. Daniel A. Riley, Judge, presiding. |
| --- | --- |
| | |
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Tressler LLP, of Chicago (Michael J. Duffy and Matthew J. Devereux, of counsel), for appellants. |
| | |
| | Leahy, Eisenberg & Fraenkel, Ltd. (Edward J. Leahy and Ronald S. Keske, of counsel), and Fraser Trebilcock Davis & Dunlap, P.C. (Anita G. Fox, of counsel), both of Chicago, for appellee. |
| | |
| Panel | JUSTICE KARNEZIS delivered the judgment of the court, with opinion. Presiding Justice Hoffman and Justice Rochford concurred in the judgment and opinion. |

## OPINION

¶ 1      Defendants and counterplaintiffs-appellants and cross-appellees 200 North Dearborn Partnership, Baird & Warner, Inc., Kenilworth, Inc., Warner Investment Company, Inc., and Elzie Higgenbottom, and intervenor plaintiff-appellant and cross-appellee Hartford Casualty Insurance Company (collectively defendants unless otherwise indicated) appeal from the trial court's August 4, 2009, and January 27, 2010, orders. Plaintiff and counterdefendant and intervenor defendant-appellee and cross-appellant United National Insurance Company (United National) cross-appeals from the trial court's August 4, 2009, and January 27, 2010, orders. We affirm for the following reasons.

¶ 2      Background

¶ 3      Underlying Lawsuit

¶ 4      This appeal concerning the extent of the respective parties' insurance coverage stems from the underlying lawsuit filed after the deceased, Marian Gal, died due to an elevator malfunction at a building located at 200 North Dearborn Parkway in Chicago. Gal v. 200 North Dearborn Partnership, No. 01 L 010485 (Cir. Ct. Cook Co.). The accident occurred on July 19, 2001. The record on appeal does not contain a copy of the original complaint. However, documents in the record reference that it was filed on or about August 21, 2001. The record contains the fifth amended complaint, which was filed on June 22, 2006. The fifth amended complaint named as defendants 200 North Dearborn Partnership, Aargus Security

Systems, Inc., Schindler Elevator Corporation, Baird & Warner, Inc., Baird & Warner Management Group, Inc., B&W Management Group, Inc., Elzie Higgenbottom, Kenilworth, Inc., and Warner Investment Company, Inc., f/k/a Kenilworth, Inc. It alleged that on the day of the accident, Gal was at the building located at 200 North Dearborn Parkway performing janitorial services. Despite previous malfunctions with one of the elevators, Gal was given an access key to the elevator by an Aargus security guard. When the elevator doors opened, the elevator was not at the same floor as Gal, and he plummeted down the elevator shaft to his death. The suit was ultimately settled in November 2006.

¶ 5                          The Agreement and Insurance Policies

¶ 6     In 1995, Aargus Security contracted with 200 North Dearborn in a continuing services agreement (Agreement) to provide certain services with respect to the property located at 200 North Dearborn Parkway in Chicago. The Agreement provided that Aargus would name Baird & Warner, Inc., and the "[o]wner" as "additional insureds." "Owner" was defined as "200 North Dearborn Partnership."

¶ 7     United National issued a commercial general liability policy to Aargus, which covered the relevant time period when Gal's accident occurred. The "additional insured" endorsement did not specifically name who was an additional insured; rather, it stated "blanket where required by contract." The "additional insured" endorsement contained two limitations. First, the insurance would not apply to an additional insured's own acts or omissions. Second, if liability was to be imposed on the additional insured because of its acts or omissions and those of the named insured, the insurance would serve as "coinsurance with any other insurance available to the additional insured, in proportion to the limits of liability of all involved policies." The policy also contained an employer's liability exclusion, which excluded coverage for bodily injury to an employee of the insured arising out of and in the course of employment by the insured. Further, the policy had a $1 million per-occurrence limit. United National initially denied coverage to 200 North Dearborn and Baird & Warner; however, United National later provided a defense under a reservation of rights.

¶ 8     200 North Dearborn was also insured by Hartford Casualty Insurance Company. Hartford issued a commercial general liability insurance policy to 200 North Dearborn, which covered the relevant time period when Gal's accident occurred. The policy had a $1 million per-occurrence limit. Hartford undertook 200 North Dearborn's defense in the underlying lawsuit.

¶ 9                          Declaratory Judgment Action

¶ 10    United National filed this declaratory judgment action on August 18, 2006. The following defendants were named: 200 North Dearborn, Baird & Warner, Inc., Kenilworth, Inc., Warner Investment Company, Inc., Elzie Higgenbottom and Edward Gal, as special administrator of the estate of Marian Gal, deceased. United National acknowledged that it was defending its named insured Aargus in the underlying lawsuit. United National further acknowledged that it had agreed under a reservation of rights to defend 200 North Dearborn and Baird & Warner pursuant to the "additional insured" endorsement in its policy with

-3-

Aargus. However, United National contended that it had no duty to defend or indemnify as additional insured defendants Kenilworth, Inc., Warner Investment Company, Inc., and Elzie Higgenbottom, whom it referred to collectively as the "non-identified defendants." According to the declaratory judgment complaint, the "non-identified defendants" were added as defendants in the third amended complaint in the underlying cause in 2003.

¶ 11  The parties filed cross-motions for summary judgment. United National sought summary judgment against defendants on the basis that Kenilworth, Warner Investment Company, Inc., and Higgenbottom were not additional insureds under United National's policy with Aargus. United National further alleged that it did not have a duty to defend or indemnify those defendants and was not estopped from denying coverage.

¶ 12  Hartford, on behalf of itself and all defendants, sought summary judgment against United National on the basis that United National was estopped from denying coverage or raising any coverage defenses because United National breached its duty to defend. Hartford alleged that United National's duty to defend was triggered by the allegations in the underlying complaint and since United National waited an unreasonable amount of time to bring the declaratory judgment action, United National should be estopped from litigating its duty to indemnify defendants.

¶ 13  The court ruled on the motions in a written order on August 4, 2009. The court denied United National's motion and granted Hartford's motion in part. The court determined that United National had a duty to defend the "non-identified defendants" under the "additional insured" endorsement since they were partners of 200 North Dearborn. The court also determined that defendants had targeted tender to United National rather than to Hartford and United National was required to reimburse Hartford for all sums paid in defense and settlement of the underlying lawsuit.

¶ 14  United National filed a motion for reconsideration or clarification of the court's order. The court ruled on the motion in a written order on January 27, 2010. The court ordered: (1) United National was not estopped from asserting defenses to the duty to indemnify defendants; (2) defendants 200 North Dearborn and Baird & Warner were not entitled to indemnification from United National since the policy issued by United National excluded coverage for bodily injuries to an employee of the insured and the deceased was the insured's employee; (3) any remaining duty of United National to reimburse Hartford was limited to the remaining limits of United National's policy; and (4) there was no just reason to delay enforcement or appeal of the order. Defendants now appeal from the court's orders and United National cross-appeals from the orders.

¶ 15                                    Appeal

¶ 16  Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). The interpretation of an insurance policy and the coverage provided are questions of law that are appropriate for resolution through summary judgment. *American Service Insurance Co. v. Jones*, 401 Ill. App. 3d 514, 520 (2010). We review the trial court's

-4-

summary judgment ruling under a *de novo* standard of review. *American Service Insurance Co.*, 401 Ill. App. 3d at 520.

¶ 17    An insurer's duty to defend is much broader than its duty to indemnify its insured. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 393 (1993). The primary function of the court when construing an insurance policy is to ascertain and enforce the intentions of the parties as expressed in the agreement. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391. In determining whether an insurer has a duty to defend, a reviewing court must compare the allegations of the underlying complaint to the relevant terms of the insurance policy at issue. *Clarendon America Insurance Co. v. B.G.K. Security Services, Inc.*, 387 Ill. App. 3d 697, 702-03 (2008). If the underlying complaint alleges facts within or potentially within the policy's coverage, the insurer's duty to defend arises even if the allegations are groundless, false or fraudulent. *Clarendon America Insurance Co.*, 387 Ill. App. 3d at 703.

¶ 18    Indemnification is a separate question from the much broader duty to defend. The question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 127 (1992).

¶ 19    When an insurer concludes the claims in a lawsuit against its insured do not fall within the coverage provided by the policy, the insurer must either: (1) defend the lawsuit under a reservation of rights, or (2) seek a declaratory judgment that no coverage exists. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150 (1999). "If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." *Ehlco Liquidating Trust*, 186 Ill. 2d at 150-51. The estoppel doctrine applies only where an insurer has breached its duty to defend. Therefore, a court inquires whether the insurer had a duty to defend and whether it breached that duty. *Ehlco Liquidating Trust*, 186 Ill. 2d at 152. However, application of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered. *Ehlco Liquidating Trust*, 186 Ill. 2d at 151.

¶ 20    Defendants contend on appeal that: (1) United National should be estopped from contesting its duty to indemnify Hartford; (2) United National should be estopped from asserting the employer's liability exclusion; and (3) United National's liability should not be limited to the remaining limits of its policy. Hartford seeks reimbursement from United National in the amount of $475,000, for the sums it paid to settle the underlying lawsuit, as well as prejudgment interest accrued thereon.

¶ 21    We first consider the trial court's determination that United National was not estopped from contesting coverage. The trial court stated, "United's filing of a declaratory judgment prior to trial or settlement does not estop United from litigating their duty to indemnify the defendants." Defendants maintain that since United National waited almost four years after 200 North Dearborn's tender of defense and less than one month before trial was to begin in the underlying lawsuit to file this declaratory judgment action, United National breached its duty to defend 200 North Dearborn and as a result should be estopped from relying on any

defenses to indemnity coverage.

¶ 22    Here, we find that United National was not estopped from contesting coverage because United National defended 200 North Dearborn and Baird & Warner under a reservation of rights and also filed a declaratory judgment action, which sought, among other relief, a determination of its rights to defend the "non-identified defendants" (Kenilworth, Warner and Higgenbottom). The record indicates that 200 North Dearborn first tendered its defense to United National on September 27, 2002. On February 12, 2003, Baird & Warner also tendered its defense to United National. That letter indicated that both 200 North Dearborn and Baird & Warner were targeting tender to United National and wanted United National to exclusively defend them rather than their own insurance provider, Hartford, pursuant to the principles set forth in *John Burns Construction Co. v. Indiana Insurance Co.*, 189 Ill. 2d 570 (2000). United National initially denied that it had a duty to defend 200 North Dearborn and Baird & Warner; however, in a February 1, 2005, letter, United National agreed to defend 200 North Dearborn and Baird & Warner under a reservation of rights. United National's position was based on its review of all the materials it had received as well as the third amended complaint in the underlying lawsuit. Next, in an undated letter from defendants' counsel to United National, counsel for the first time referenced the "non-identified defendants" and claimed that they had tendered their defense to United National in February 2003; however, no documentation supported the claim. Defendants' counsel did subsequently allege in an undated letter sometime after March 2006 that the "non-identified defendants" were either partners of 200 North Dearborn or successors in interest to Baird & Warner. As noted above, the fifth amended complaint in the underlying lawsuit was filed in June 2006, and United National's complaint for declaratory judgment was filed in August 2006. In light of the long procedural history of this case, we find that United National's declaratory judgment suit was filed within a reasonable amount of time so as to preclude estoppel. Defendants refer to United National's "four-year" delay in bringing the declaratory judgment suit as unreasonable. However, as noted above, 200 North Dearborn and Baird and Warner tendered their defense to United National in 2002 and 2003, and United National agreed to defend them under a reservation of rights in 2005. United National only learned the "non-identified defendants" were seeking coverage under United National's "additional insured" endorsement sometime in 2005 or 2006. Therefore, its filing of the declaratory judgment suit in August 2006 was not so delayed or unreasonable to apply estoppel. United National did not sit on the sidelines and ignore its duties. United National defended 200 North Dearborn and Baird & Warner under a reservation of rights and subsequently filed a declaratory judgment action shortly after learning the "non-identified defendants" claimed coverage under its policy. Although the trial court ultimately determined that United National breached its duty to defend the "non-identified defendants," estoppel does not apply because United National filed a declaratory judgment action.

¶ 23    We next consider the trial court's determination that the employee liability exclusion in United National's policy excluded coverage for Gal because he was the insured's employee. Defendants contend that the trial court's determination was in error and United National should reimburse the sums paid by Hartford to settle the underlying lawsuit.

¶ 24    As noted above, United National's policy also contained an employer's liability

exclusion, which excluded coverage for bodily injury to an employee of the insured arising out of and in the course of employment by the insured.

¶ 25    Notwithstanding the parties' arguments to the trial court regarding the exclusion, the trial court did not specifically address the exclusion in its August 4, 2009, order. Upon United National's motion to reconsider or for clarification, the trial court addressed the exclusion in its January 27, 2010, order, determining that the exclusion applied to preclude indemnification.

¶ 26    Defendants argue that the trial court's determination was in error because the trial court "improperly made a factual determination as to Gal's employment status without conducting the appropriate evidentiary hearing to consider presentation of admissible evidence, as opposed to pure argument." Defendants further point out that the underlying complaint did not allege that 200 North Dearborn was Gal's employer.

¶ 27    United National notes that it presented evidence to the trial court that 200 North Dearborn admitted that Gal was its employee in various documents 200 North Dearborn submitted to the trial court in the underlying lawsuit.

¶ 28    Here, we find no error in the trial court's determination that Gal was the insured's employee, and as such, the employee liability exclusion in the policy precluded indemnification. The trial court considered the evidence presented by the parties, which included copies of documents filed in the underlying lawsuit in which 200 North Dearborn admitted that Gal was its employee. Merely because the underlying complaint itself did not allege that 200 North Dearborn was Gal's employer, or because the trial court in the underlying lawsuit made no finding as to Gal's employer, did not preclude the trial court from making such a finding in the instant case.

¶ 29    We next consider the trial court's determination that any remaining duty of United National to reimburse Hartford was limited to the remaining limits of its policy. Defendants contend that United National's liability should not be limited to its $1 million policy limit because United National failed to defend its insureds in the underlying lawsuit. Here, however, as stated above, we found that United National was not estopped from relying on any policy defenses, which includes limiting its coverage to the $1 million per-occurrence limit. We find no error in the trial court's determination.

¶ 30                                    Cross-Appeal

¶ 31    United National contends in its cross-appeal that: (1) the "non-identified defendants" were not additional insureds under United National's policy; (2) United National did not breach the duty to defend because United National complied with the terms of the "additional insured" endorsement; (3) the targeted tender rule in *John Burns* does not apply to the facts of this case; and (4) prejudgment interest does not apply.

¶ 32    We first address whether the "non-identified defendants" were additional insureds under the "additional insured" endorsement in the policy. United National argues that because the policy only listed "owner" and Baird & Warner as additional insureds, and "owner" was only defined as "200 North Dearborn Partnership," the "non-identified defendants" were not additional insureds.

¶ 33　　The trial court determined that the "non-identified defendants" were additional insureds because they were partners of 200 North Dearborn, noting that a partner's liability was coextensive with the partnership itself. United National does not dispute this; rather, it contends that the "additional insured" endorsement applied to 200 North Dearborn, but not to any of its partners. Here, however, there is no such language in the policy excluding any past or present partners of 200 North Dearborn. We decline to adopt United National's interpretation that as "owner," "200 North Dearborn Partnership" did not include the partners within the partnership. Therefore, we agree with the trial court that United National had a duty to defend the "non-identified defendants" under the "additional insured" endorsement.

¶ 34　　United National next contends that it did not breach its duty to defend because it complied with the terms of the "additional insured" endorsement. United National argues that with respect to the "non-identified defendants," it did not have a duty to defend them and therefore could not have breached the duty to defend. With respect to 200 North Dearborn and Baird & Warner, United National argues that since its policy was to act as coinsurance, it complied with the terms of the policy by reimbursing Hartford 50% of its defense costs.

¶ 35　　Here, as stated above, United National had a duty to defend the "non-identified defendants" under the "additional insured" endorsement. As to 200 North Dearborn and Baird & Warner, the trial court initially ordered United National to reimburse Hartford for 100% of its defense costs (later qualified by up to the limits of the policy) because defendants had targeted their tender to United National. As addressed below, based on the theory of targeted tender, United National was obligated to provide for all of defendants' defense costs, up to the policy limits.

¶ 36　　United National next contends that the targeted tender rule in *John Burns* does not apply to the facts of this case. Our supreme court held in *John Burns* that when an insured is covered under more than one insurance policy, it may tender its defense solely to one insurer, and that insurer may not seek equitable contribution from another insurer whose policy is in existence but whose coverage the insured has refused to invoke. *John Burns*, 189 Ill. 2d at 578. The court further held that even when there is an "other insurance" provision in the policy, if the other insurance is never triggered, then the apportionment of liability under the "other insurance" clause does not arise. *John Burns*, 189 Ill. 2d at 578. The trial court determined that since 200 North Dearborn and Baird & Warner targeted their defense to United National, United National had the sole primary obligation to defend and indemnify them.

¶ 37　　Here, we agree with the trial court that the holding in *John Burns* applies to this case. Defendants 200 North Dearborn and Baird & Warner sought coverage under United National's "additional insured" endorsement in 2003 and informed United National that they would not invoke any coverage from their insurer, Hartford. However, when United National initially refused to defend 200 North Dearborn and Baird & Warner, they turned to Hartford to provide a defense. Subsequently, United National defended 200 North Dearborn and Baird & Warner under a reservation of rights, but only reimbursed Hartford 50% of the defense costs since it believed its policy only acted as coinsurance. However, the holding in *John Burns* does not support United National's position. According to *John Burns*, an insured who is covered under more than one policy may choose which insurer would be required to

defend and indemnify it and the insurer may not seek contribution from another insurer notwithstanding an "other insurance" clause in the policy. Therefore, United National should have provided 100% of the defense. Since 200 North Dearborn and Baird & Warner targeted their defense to United National, there was no other "available" insurance for United National's policy to as act as coinsurance. The trial court's determination, with which we agree, is consistent with our supreme court's holding in *John Burns*.

¶ 38 Lastly, United National contends that the trial court erred in awarding defendants prejudgment interest. Defendants respond that the trial court correctly awarded prejudgment interest to Hartford. However, neither party points to any portion of the trial court's order from August 4, 2009, or January 27, 2010, indicating the trial court took such action. The first reference to prejudgment interest appears in defendants' brief in its conclusion section. Defendants argued they were seeking reimbursement from United National, "including prejudgment interest." Generally, the decision to award prejudgment interest is a matter within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Marcheschi v. Illinois Farmers Insurance Co.*, 298 Ill. App. 306, 313 (1998). The trial court's order did determine that Hartford's damages were in a liquidated sum; however, it never specifically addressed the issue of prejudgment interest in either of the orders from which the parties appeal. Therefore, we will not address the issue on appeal.

¶ 39 Accordingly, we affirm the trial court's order.

¶ 40 Affirmed.