NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11897

INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA  vs.  GREAT NORTHERN INSURANCE COMPANY.


Suffolk.     November 2, 2015. - March 7, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.


Workers' Compensation Act, Insurer, Coverage, Election of remedies.  Insurance, Workers' compensation insurance, Contribution among insurers, Insurer's obligation to defend.  Contribution.  Tender.  Election of Remedies.



Certification of a question of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.


Barbara I. Michaelides, of Illinois (Aaron S. Bayer, of Connecticut, with her) for the plaintiff.
Jennifer C. Sheehan (Richard J. Shea with her) for the defendant.
Laura Meyer Gregory, for Massachusetts Defense Lawyers Association, amicus curiae, submitted a brief.


GANTS, C.J.  The United States Court of Appeals for the

First Circuit certified the following question to this court,

pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981):

> "Where two workers' compensation insurance policies provide coverage for the same loss, may an insured elect which of its insurers is to defend and indemnify the claim by intentionally tendering its defense to that insurer and not the other and thereby foreclose the insurer to which tender is made from obtaining contribution from the insurer to which no tender is made?"

We answer "no" to the question. Where, as here, two primary workers' compensation insurance policies provide coverage for the same loss arising from injury to an employee, the insurance company that pays the loss has a right of equitable contribution to ensure that the coinsurer pays its fair share of the loss. The employer of the injured employee may not prevent the insurance company that pays the loss from exercising its right of equitable contribution by intentionally giving notice of the injury only to that insurer.[1]

Background. We set forth below the relevant background and procedural history of the case contained in the certification order from the First Circuit, occasionally supplemented by undisputed information in the record. In January, 2010, an employee of Progression, Inc. (Progression), was severely injured in an automobile accident while traveling abroad on a business trip. Progression had purchased two workers'

---

[1] We acknowledge the amicus brief submitted by the Massachusetts Defense Lawyers Association.

compensation policies from two different insurers, one providing compulsory workers' compensation coverage from the Insurance Company of the State of Pennsylvania (ISOP), and a second providing workers' compensation coverage for employees traveling outside the United States and Canada from Great Northern Insurance Company (Great Northern).  Both policies provided primary coverage; neither was an excess policy.[2]  The employee gave timely notice of his injury to Progression and pursued a workers' compensation claim before the Department of Industrial Accidents (department).  Progression gave notice of the claim only to ISOP; it did not notify Great Northern.  ISOP immediately began making payments pursuant to the policy and defended the claim before the department.

ISOP later learned that Progression also had workers' compensation coverage under its Great Northern policy and, on October 3, 2011, sent a letter to Great Northern that gave notice of the claim and requested contribution.  In a letter dated March 15, 2012, Great Northern declined "the attempted tender" of the claim.  It informed ISOP that it had learned from

---

[2] An excess insurance policy provides coverage for a risk only when the coverage limits from other policies insuring that risk have been exhausted.  See R. Segalla, Couch on Insurance 3d § 220:32 (2005).  An excess insurance policy and a primary insurance policy "do not (absent a specific provision) act as coinsurers of the entirety of the risk.  Rather, each insurer contracts with the insured individually to cover a particular portion of the risk."  Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 449 Mass. 621, 629-630 (2007).

Progression that Progression had intended to tender the claim only to ISOP and had not authorized ISOP to report or tender the claim to Great Northern.

On November 7, 2013, ISOP filed a complaint against Great Northern in the United States District Court for the District of Massachusetts, seeking a judgment declaring that the doctrine of equitable contribution required Great Northern to pay one-half of the past and future defense costs and indemnity payments related to Progression's claim. On August 25, 2014, a judge of the District Court allowed Great Northern's motion for summary judgment. Insurance Co. of Pa. v. Great N. Ins. Co., 43 F. Supp. 3d 76, 82-83 (D. Mass. 2014). The judge concluded, "in the absence of binding precedent on this point," that Great Northern was correct "that any obligation of a co-insurer for equitable contribution to the other insurer does not arise until a claim for defense or indemnity is tendered by the insured or one authorized to act on behalf of the insured." ISOP timely appealed and, on May 29, 2015, the First Circuit certified the question before us.

Discussion. 1. Equitable contribution. Under the doctrine of equitable contribution, where multiple insurers provide coverage for a loss of an insured, an insurer who pays more than its share of the costs of defense and indemnity may require a proportionate contribution from the other coinsurers.

See Truck Ins. Exch. v. Unigard Ins. Co., 79 Cal. App. 4th 966, 974 (2000) ("Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation . . ."). See generally S.M. Seaman & J.R. Schulze, Allocation of Losses in Complex Insurance Coverage Claims § 5:2 (3d ed. 2014) (Seaman & Schulze) ("Equitable contribution applies to insurers that share the same type of obligation on the same risk with respect to the same insured"). "The right of equitable contribution does not depend on an express agreement between the parties to indemnify each other, but, rather, rests upon equitable principles that imply an obligation to contribute ratably toward the payment of a common obligation." Lexington Ins. Co. v. General Acc. Ins. Co. of Am., 338 F.3d 42, 49-50 (1st Cir. 2003). See Seaman & Schulze, supra ("The doctrine is based on principles of equity, not contract"). Because it does not derive from contract, equitable contribution, unlike subrogation, is a right of the insurer and exists independently of the rights of the insured. Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1294- 1295 (1998).

Equitable contribution is designed to prevent the potential unfair result that the company that pays first is left to cover the entire loss. See id. at 1295. "[W]here multiple insurers or indemnitors share equal contractual liability for the primary

indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant." Id. The underlying principle is that "each [insurer] pays its fair share and one does not profit at the expense of the others." Id. at 1296. The doctrine recognizes that an insured who expects to be paid in full by one insurance company may have no incentive to ask the other insurance company covering the same risk to pay its share. See Truck Ins. Exch., 79 Cal. App. 4th at 974. And the doctrine aims to deprive an insurer of "any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another coindemnitor." Fireman's Fund Ins. Co., supra at 1295. Apart from ensuring fairness, equitable contribution furthers the basic risk-spreading purpose of insurance by allowing insurers to distribute the costs of a claim equally among all insurers with coverage obligations. See S. Plitt, D. Maldonado, & J.D. Rogers, Couch on Insurance 3d § 1:9 (Supp. 2015).

For these reasons, the majority of jurisdictions recognize the equitable contribution doctrine. See Seaman & Schulze, supra at § 5:2 (citing cases from jurisdictions recognizing equitable contribution and noting that only a "minority of states" do not allow it). We are among the majority of States that have recognized the right of an insurer to seek equitable

contribution from coinsurers who cover the same risk.  See Mission Ins. Co. v. United States Fire Ins. Co., 401 Mass. 492, 498-500 (1988) (where two policies create "umbrella-type excess insurance," both insurers must "contribute equally until the policy with the lower limit is exhausted"); Travelers Ins. Co. v. Aetna Ins. Co., 359 Mass. 743 (1971) (affirming order requiring coinsurer to provide contribution to insurer that paid settlement amount for jointly covered claim).  See also Rubenstein v. Royal Ins. Co. of Am., 44 Mass. App. Ct. 842, 852 (1998), S.C., 429 Mass. 355 (1999) ("Of course, there is no bar against an insurer obtaining a share of indemnification or defense costs from other insurers under the doctrine of equitable contribution").  Cf. Boston Gas Co. v. Century Indem. Co., 454 Mass. 337, 347-348, 365-366 (2009) (where various insurers provided coverage for environmental damage over many years, pro rata allocation produces most equitable result for "long-tail claims" because it avoids saddling one insurer with full loss and "promotes judicial efficiency, engenders stability and predictability in the insurance market, provides incentive for responsible commercial behavior, and produces an equitable result").  We have recognized the right of equitable contribution in past cases, and now clearly declare that we adopt the doctrine.

2.  Selective tender.  Great Northern does not challenge the wisdom of the equitable contribution doctrine but contends that it does not apply in this case because Progression purposely tendered the workers' compensation claim only to ISOP. It argues that "there is no support in the case law of any jurisdiction for the proposition that, in the absence of exceptional circumstances, the doctrine of equitable contribution can override explicit, unambiguous policy language."  Lexington Ins. Co., 338 F.3d at 50.  And it notes that, under its workers' compensation insurance policy with Progression, it had no duty to provide coverage unless Progression "fully complied with all of the terms and conditions of the policy."  One of those terms required Progression to give notice to Great Northern "at once if injury occurs that may be covered" by the policy.  Because Progression purposely gave no such notice, Great Northern claims that it had no duty to provide coverage for the losses suffered by Progression's injured employee.  It also claims that, because it had no duty to provide coverage, there can be no equitable contribution, which is predicated on multiple insurers providing coverage for the same risk.

Although it does not use the term, Great Northern essentially asks us to recognize the "selective tender" exception to the doctrine of equitable contribution, which

provides that, "where an insured has not tendered a claim to an insurer, that insurer is excused from its duty to contribute to a settlement of the claim." Mutual of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wash. 2d 411, 421 (2008). The exception has been recognized by only "a minority of jurisdictions." R. Segalla, Couch on Insurance 3d § 200:37 (2005). See, e.g., John Burns Constr. Co. v. Indiana Ins. Co., 189 Ill. 2d 570, 574 (2000); Mutual of Enumclaw Ins. Co., supra at 421-422. The Supreme Court of Washington adopted the "selective tender" exception, reasoning:

> "Equity provides no right for an insurer to seek contribution from another insurer who has no obligation to the insured. . . . The duties to defend and indemnify do not become legal obligations until a claim for defense or indemnity is tendered. Further, the insurer who seeks contribution does not sit in the place of the insured and cannot tender a claim to the other insurer. Thus, if the insured has not tendered a claim to an insurer prior to settlement or the end of trial, other insurers cannot recover in equitable contribution against that insurer" (emphasis in original; footnote omitted).

Mutual of Enumclaw Inc. Co., supra at 420-421. As this excerpt makes clear, the underlying premise of the selective tender exception is that, if the insured chose not to tender a claim to an insurer, the insurer has no obligation to defend or indemnify that claim and therefore has no obligation to contribute towards the defense or indemnification. That premise is incorrect with respect to workers' compensation insurance under Massachusetts law.

Workers' compensation insurance is a creature of statute, and all workers' compensation insurance policies must be interpreted to comply with applicable statutes and regulations governing workers' compensation. See generally G. L. c. 152, §§ 26, 44; Darcy v. Hartford Ins. Co., 407 Mass. 481, 485 (1990) (notice provision in workers' compensation insurance policy interpreted in accordance with applicable statute). General Laws c. 152, § 26, provides that when an employee is injured in the course of his or her employment, that employee "shall be paid compensation by the insurer or self-insurer." Therefore, under Massachusetts law, although the employer purchases the workers' compensation policy, a workers' compensation insurer is directly liable to an injured employee for the workers' compensation benefits provided by law; the insurer does not reimburse the employer for its payment of these benefits.

Under Massachusetts workers' compensation insurance law, an injured employee presents a claim for compensation by providing notice of the injury in writing "to the insurer or insured [i.e., the employer] as soon as practicable" after the incident causing the injury, stating the time, place, and cause of the injury (emphasis added). G. L. c. 152, §§ 41, 42. The employer is required to give notice of the injury to the department and its workers' compensation insurer within seven days, but the

failure to do so results only in a nominal fine to the employer;[3] it does not bar the employee from obtaining compensation from the workers' compensation insurer.  The employee is barred from receiving workers' compensation benefits under G. L. c. 152, § 44, only if the insurer, the insured (i.e., the employer), and their agent had no knowledge of the injury and the insurer was prejudiced by the absence of notice.  See G. L. c. 152, § 44. By giving notice of the injury to the employer alone, an employee preserves his or her entitlement to workers' compensation benefits.

In light of these statutory provisions, Great Northern's obligation to defend and indemnify the claim was triggered by the notice given to Progression by its injured employee, regardless of whether Progression gave notice of the injury to Great Northern.  Therefore, as applied to workers' compensation benefits, the language in Great Northern's policy providing that its duty of coverage is contingent on the employer providing notice of the injury is contrary to Massachusetts law, and null and void with respect to a Massachusetts employee.

---

[3] Under G. L. c. 152, § 6, the failure of an employer to notify the Department of Industrial Accidents or the workers' compensation insurers of the injury "shall be punished by a fine of one hundred dollars for each such violation" but is punishable only if the employer violates this provision three or more times in any year.

The Supreme Court of Utah considered whether to adopt the selective tender exception where multiple insurers provided overlapping workers' compensation coverage and rejected it for the same reasons we do.  Workers Compensation Fund v. Utah Business Ins. Co., 296 P.3d 734, 739 (Utah 2013).  The court explained that Utah's workers' compensation statute (like ours) provides that insurers are liable for injuries reported by employees regardless of whether employers notify or formally tender claims to insurers.  Id.  Because "[a]ll insurers . . . are automatically liable for claims reported to employers," the court held that "[t]he statutory scheme . . . precludes [it] from adopting the [selective] tender doctrine in the context of workers compensation."  Id.

The selective tender exception also does not accord with Massachusetts law governing general liability insurance.  Under Massachusetts law, an insurer's coverage obligation is triggered by notice regardless of the timing or the source of such notice; late notice or notice from a third party does not preclude coverage unless the insurer is prejudiced.  See G. L. c. 175, § 112; Boyle v. Zurich Am. Ins. Co., 472 Mass. 649, 655-659 (2015).  Specifically, pursuant to G. L. c. 175, § 112, "[a]n insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence . . . which may give rise to

liability insured against unless the insurance company has been prejudiced thereby."  See Johnson Controls, Inc. v. Bowes, 381 Mass. 278, 282 (1980) (insurance company seeking relief from coverage obligations under liability insurance policy because of untimely notice must show both breach of notice provision and prejudice arising from breach).  In Boyle, supra at 658, where a third party notified the insurer of the complaint, we held that the insured's failure to give notice did not excuse the insurer from its duty to defend unless it could demonstrate that the insured's breach of its notice obligation caused prejudice by depriving the insurer of the opportunity to mount an effective defense.  Therefore, in Massachusetts, an insured's failure to tender a claim by giving timely notice does not protect the insurance company from liability on the claim, even if the failure were intentional, unless the insurance company was prejudiced by the untimeliness of the notice.  Because the premise of the selective tender doctrine is that an insurer is not liable on a claim where the insured fails to give timely notice, adoption of the selective tender exception would be in conflict with our statutory and case law governing liability insurance.

Its adoption would also be contrary to sound public policy because it would reward insurers that try to ignore their coverage obligations at the expense of those that

conscientiously honor them. Under the selective tender exception, an insured that has two insurers of the same risk might choose to tender the claim to the insurance company that will promptly honor and pay the claim with minimum inconvenience and paperwork, and avoid tendering the claim to the insurance company that would delay payment of the claim and maximize the inconvenience and paperwork involved in obtaining payment. Selective tender would prevent the conscientious insurer from seeking equitable contribution from its less conscientious coinsurer. It would reward the "bad" insurer, who would be spared paying its fair share of the claim, and punish the "good" insurer, who would be required to pay the entirety of the claim alone. Insurers should be encouraged to promptly accept their coverage obligations and begin defending claims; they should not be rewarded for failing to do. See Fireman's Fund Ins. Co., 65 Cal. App. 4th at 1295.

Selective tender would also burden the Massachusetts Insurers Insolvency Fund, which, among other things, covers claims of insureds where the insurer has become insolvent. See G. L. c. 175D, § 5. If an employer with two workers' compensation insurers could negate an insurance company's workers' compensation coverage by electing not to notify that insurer of the injury, then the full burden of coverage would

fall on the notified insurer and, if that insurer were to become insolvent, on the Fund.  See id.  See also G. L. c. 175D, § 2.

Conclusion.  We answer "no" to the certified question. Under Massachusetts law, where two workers' compensation insurance policies issued by different companies provide coverage for the same loss, an employer, by electing to provide notice of the claim only to one insurer, does not foreclose that insurer from obtaining equitable contribution from the other insurer.

The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court.  The clerk in turn will transmit one copy, under the seal of the court, to the clerk of the United States Court of Appeals for the First Circuit, as the answer to the question certified, and will also transmit a copy to each party.